Good morning. Will the attorneys who are going to make the presentation please approach the podium there, state your names, and the party you represent. Good morning, Your Honors. Andrea Hoeflich. I represent Alliance Property Management, APM. Good morning. Gabriella Comstock on behalf of the Forest Villas of Countryside Condominium Association. Okay, good morning. The third member of our panel is unable to be here today. However, she will listen to the transcripts and we will then conference this case and come to a decision. This case has been scheduled for 30 minutes. Each side will get 15 minutes apiece. The appellant may reserve some time for rebuttal if you so choose. And with that, we will proceed. Thank you. Good morning again. Andrea Hoeflich on behalf of Alliance Property Management. APM is owned and operated by Mr. Chris Scolas, who is present today. And on his behalf, as well as my own, I thank you for this opportunity. I stated in my opening statement at the trial, and I'll say it again here today, this is a straightforward breach of contract case. The trial court erred in rescinding the management agreement after it was already terminated by the association. The court's reasoning was flawed. In the 731-14 judgment, the court reasoned that due to a mutual mistake of fact, the extension contract running from July of 2011 to July of 14 was void as the board had no legal authority. Your client became the management company for this condominium association sometime in 2008? Correct. And being the manager of that condo, isn't he charged with knowledge of what the bylaws of this condominium association state? It is not customary for the management company to have in its possession the declaration, the bylaws, the governing docs during the negotiations of a contract. Well, I understand that. And that's maybe true in 2008. But subsequent to 2008, once he became the manager, in advising the board, which I think is part of his duties, wouldn't he have necessarily have read the declaration and understand the bylaws and what can be done and what cannot be done, particularly by 2011? That does seem reasonable. However, as is customarily done in his business, him having operated this management company for over 20 years and having as many as 30 clients at a time, it would be almost impossible to read and, you know, familiarize with every association's governing doc, every provision and term in those documents. Are you suggesting that he deals with all his 20 clients the same way regardless of what their separate declarations and bylaws provide? No, no, no. But that they are all different. What I'm saying is that what is customarily done in the industry is that they would address particular provisions as those issues arise. Well, in this case, the issue which arose in 2011 was a signing of a management contract. Wouldn't he at that time know, I better look and see the declaration, wouldn't he at that time know about the 24-month prohibition? The original contract was signed May 27th of 2008. And it was a 24-month prohibition. The extension, which was initiated by the association, was signed March 2nd of 2010. But there weren't any changes between the general provisions in the two contracts. No, there weren't. So that the initial contract that the parties entered into would have the same provision with respect to the responsibilities for alliance, would they not? They were identical. However, the ignorance of the two-year restriction was universal to all the parties concerned. Even the new board that took effect in March of 2011 was also ignorant of the provision. Is there a reason that knowledge shouldn't be imputed to alliance? Yes, because it is customary in that industry that the management company would address the issues, provisions, because they differ in every single association. And it is customary that they address it as the issues arise. It would be impossible for a management company, no management company, has all of the provisions of all of the associations memorized. APM did offer the board a 24-month, a 36-month, and a 48-month contract in May of 2008. The board elected to take the 36-month because of the financial benefits. As I said earlier, the new board, the Playa, Miscellany, and Peterson board took office in March of 2011. In April of 2011, they had already decided that there were issues with APM, and they immediately set in motion their plan to oust APM. But really, that's really part of the nature of condominium associations. We get quite a few cases here. And the dynamic that's at work is we have a board of directors. They get elected for two-year terms, and then there's constantly change every year. But sometimes a new majority takes charge of it, and they want to have the management company they choose to get along with. And when we have these provisions which limit the length of the management contract, that's intended to facilitate new boards taking over. Here we have a contract which was done in violation of the spirit of what this was done. It wasn't done in violation of the spirit. I think that the board may have exceeded its authority by entering a three-year instead of a two-year. But the idea of it is to prevent a three-year because they don't want a new board burdened by contracts put on by the old board. I understand that. And in this particular management contract, under Article III, there's a provision that the parties, either party, 60 days prior to the natural expiration, which would have been July 15th of 2011. So by May 15th of 2011, either party could have sent written notice to the other. No cause, just simply we don't wish to renew. Remember the extension being in place. If it was valid, assuming it's valid. Well, that takes me to my next point. We have to assume that it was valid because the association acknowledged the contract as being valid. In their July 27, 2000 letter, they acknowledged the existence of a valid management agreement. They relied on the very terms of that agreement to particularly Article IX, the termination provision, which says, I'm paraphrasing, that if APM were to violate or cause a material breach of the contract, they would be given 60 days to cure that defect. Don't they subsequently, though, notice that the contract is void? I'm sorry? Don't they subsequently give notice that it's void? No, they terminated the contract in their October 13th letter that was sent to my office via regular U.S. mail. The October 13th letter stated two additional claimed breaches of the contract by APM and terminated the contract as of October 31st. The contract was then terminated October 31st. The Playa board sent another letter, U.S. mail, to APM, indicating we've hired a new management company as of November 1st. Turn over the documents. Mr. Scurlus notified the board, I'm coming to the property tomorrow. They said no. He was thereafter precluded from performing any more duties under his responsibility. I should also point out that when he received the letter, the July 27th letter, notifying him of their claimed breaches, he immediately contacted one of the board members, sought a meeting with them to try to resolve and reconcile their grievances. That request was denied. He was not given the opportunity. Isn't this case simply about whether the management contract is void or voidable as opposed to the methodologies used to terminate? Isn't that really the question here, whether it's void or voidable? First and foremost, it was acknowledged as a valid contract by the association, through their attorneys. But even if valid, even if they acknowledged it as valid,  and there's a disposition rendered by the circuit court. And the question is whether it's void or voidable. Isn't that the question? I don't believe that you can void or rescind a contract that's already been terminated. If the contract is void, does it exist? If it's void ab initio, no, it doesn't exist. This is not a case of void ab initio. What is this a case of? Well, it's a case of a breach of contract. They recognized it as a valid contract, terminated it, before they got leave to file an affirmative defense alleging that it was void ab initio and pursuant to mutual mistake. They waited 32 months to file their affirmative defenses alleging the void ab initio argument. It wasn't void versus void ab initio. They wanted it to be void ab initio. The court did not do that. The court voided, rescinded the contract as of the termination date. And it is impossible to void a contract that has already been terminated. He didn't void it from the beginning. He avoided it from the termination date. But would it take the court to void it or would it be void by operation of law? If the board exceeded its authority, what difference does it make what the trial court said? The two-year limitation, our position is that it is restrictive. It is not exclusionary. And if the board exceeded its authority, it would give rise to a breach of fiduciary duty of the board member brought by the association. Vendors and tradesmen, fighting in favor of the association would send a ripple effect that vendors, tradesmen, and associations may not be able to deal with. It's going to require any vendor or tradesman who wants to reasonably and properly negotiate a contract with the association to get their declaration, their governing documents, their bylaws. And if they have the inclination and the ability to read them and understand them, they are going to have to do it for every single association that they want to enter a contract with. Is that the case here though? Are we dealing with a third-party vendor or are we dealing with the management company? The management company is a third-party contractor. And it will be impossible for, you know, traders and, tradesmen and vendors to enter contracts, perform under those contracts 40 months only to have the rug pulled out from under them when they were justified in relying on that contract. But just to be clear, your client actually did work until the end of October. He got paid for all the work that he did, right? Under the terms of the contract. Yes, he did. So, even if we say this is a quantum marriage, for the work he performed, he got paid. And what you're suing for is some expectation of future pay for no work. No, what we're suing for was a breach of a valid contract that provided in Article 9 that if the association did not prove a material breach and terminated the contract, that liquidated damages would pay him for the balance of that contract. Expectancy of what you anticipated you would earn if the contract had been performed. That is correct. As far as avoidable, again, without waiving our position that this is a breach of contract case, a mutual mistake may lead to avoidable contract, which then may be ratified or affirmed, which our briefs are overflowing with argument on the avoid versus avoidable, that everyone that demanded the services, accepted the services, paid for the services, and received the services, they ratified that contract. So we are, I don't know how much time I have, I would like to save a moment or two for rebuttal. Absolutely. But Alliance Property Management is asking this Honorable Court to reverse the trial court's decision  and the association breached that contract. And remand this case back to hearing on damages. Are there any other questions that I may answer for you? I have one other question. There is this case, Palm versus Lakeshore, which seems to hold that the board may not, in any instance, exceed its authority. Can you say or can you tell us why Palm simply isn't dispositive here in this issue? Palm isn't any more dispositive as is Walensky or Grassini. Palm really focuses on the use of self-serving statements by the board members. They were very vague. They were very self-serving. And the court demanded that they should have provided some legal assistance or letter from an attorney that would have supported their position. But all of their statements were very self-serving and very vague. Does it turn on whether the statements were self-serving or whether or not they exceeded their authority? Regardless of whether the statements might have been. Accepting is true that their statements might have been self-serving. Is that the basis for the court's holding in Palm? I don't read it as such, but I allow for the possibility that I'm misreading it. I don't recall the breach in the Palm case. All I can say is in Walensky, the court said that the boards and associations should follow the procedural aspects of their governing documents. The procedural aspects should, not must, not shall, should. And in Grissini, it was found to be a illegal contract because they exceeded their statutory. They must adhere to the statutory authority. So to the effect that they failed to do so, doesn't that leave us then with a void contract? No, because the two-year limitation or restriction, again, is restrictive, not exclusionary, and it's not the law. We also have a case here where this association is no stranger to making exceptions to the provisions of their governing documents. The declaration says that everybody pays their own internal damage or to the damage of the other unit owners. This Playa board paid from association funds another board member's plumbing bill. Well, without belaboring the point, you said earlier that your client doesn't historically read the condo docs. So how do we know that in the past these other provisions have been overlooked or waived? If we can still historically read them. If I misspoke and I apologize, I did not mean to imply that he historically doesn't read them. What I said was that the procedure historically is that he refers to the governing documents as specific issues arise. And there was a letter written by the Playa board specifically making exception to that portion of the declaration and paid with association funds, the board member's bill. There was correspondence that would indicate to the management company that the condo association intends to waive or... Is that... The letter from the board went directly to the board member who was receiving the benefit of the association's payment. And somehow Alliance was made aware of that. Yes. But Alliance did not receive a similar correspondence from the board indicating that it intended to waive the 24-month restriction. No, there was nothing in writing specifically. Okay. But they waived it every month from July of 2008 through October of 2014. That would be the ratification argument. Okay. Okay. Thank you. I have some time for rebuttal. Ms. Comstock? Good morning again, Your Honors. Gabriela Comstock for the Defendants of the Forest Villas of Countryside Condominium Association. Your Honors, I would agree with the appellant that this is a simple breach of contract claim. But as I was listening to the questions and the argument, we do have to look at the contract. And because it is a breach of contract claim, the plaintiff has the burden of proving a valid and enforceable contract that the defendant breached and that the plaintiff fully performed and, of course, damages. But there's more to it than just that. And as Your Honor alluded to, there is Poem 2 v. 2800 Lakeshore Drive Condominium Association that is very important to this case. Because not only did that case, but other cases in the state of Illinois, including Walensky and Duffy v. Orland, the court said, Board of Directors need to comply with the governing documents. And we have a provision here which in our declaration specifically states management contracts cannot exceed two years. In the Palm case, as Your Honor was inquiring about, there was a case where there was an alleged breach of fiduciary duty for not following the procedures. And as the appellant alluded to, it is procedures that need to be followed by a Board of Directors. And the Palm 2 case made it clear that those terms within the declaration need to be followed. At the trial level, the court completed the required analysis in looking at the contract in order to determine whether or not there was a valid and enforceable contract. Again, the defendant, through its declaration, has a term which prohibits the association from entering into a management agreement in excess of two years. There is no dispute, and the testimony in the evidence at trial was clear, that the extension of the agreement in addition to the original agreement was for a term of three years. When a contract contains a defect that's related to the formation of the contract, it then, if the contract, is void, it means the Board of Directors only had the authority, pursuant to its declaration, to enter into a management contract that was two years or less. It didn't have the authority to enter into an agreement in excess of that. For that reason, because it lacked the authority, it is a void contract. And the trial court looked at that, and the trial court considered it. Now, there can be times where it's not as clear if it's void or voidable. The trial court even looked at it to the extent that there is a mutual mistake. Could it be a voidable contract? The testimony at the trial level was undisputed. The parties did not know or weren't aware of the two-year provision that limited the term of the management contract. And the trial court determined that it was a material term. And it is a material term because, while the appellant argues that it's a customary for the industry to not be familiar with the governing documents prior to the execution, we can't ignore the terms of what the underlying management contract between the parties that was in existence at the time of the extension was executed. Which did require that the management company would assist the board in meeting those fiduciary obligations. And under the laws, part of the fiduciary obligations for a board is to comply with the governing documents. Is there a best interest exception? There is what the court is likely very well aware of is the best judgment rule. And Paul even addressed the best judgment rule as many other cases related to associations. However, when courts have looked at the best judgment rule with association living, it's in those cases where the association has made a mistake but made the best decision they could at that time. And in this case, what is in existence here is there was a term in the declaration that says it can't exceed two years. If the association doesn't have the authority to enter into a contract that exceeds two years, even the best judgment rule isn't going to change that void contract into now a contract that exists. And so in this case, it doesn't apply. But was there testimony at trial that at least one or two of the board members believed that they had the right to overlook or waive the 24-month exception in the best interest of the condom? The testimony at the trial level was that the parties who had executed the extension to the agreement, that they were not aware of the two-year exception, I'm sorry, the two-year requirement at the time that the extension was executed. However, they, in their opinion, believed it was in the best interest of the association to enter into it. So the testimony was not that they knew of it and then entered into it because it was in the best interest. And even if they did believe it was in the best interest, under the law, it can't ignore that term of the declaration which says you can't enter into a contract that exceeds two years. The board only has the authority to enter into certain agreements or to take certain action as outlined in their declaration or in the Illinois Condominium Property Act or other Illinois law. And if it's not there, then they don't have the authority. They didn't have the authority to enter into an agreement in excess of three years, even if they believed it was in the best interest of the association. Certainly, acting in the best interest of the association is very important for board of directors within a condominium association, but it doesn't allow them to ignore the terms of a declaration. And that is inherent in the case law and as most recently noted by the court as well, in Palm 2. You can't just ignore it even if it's in the best interest because there's a reason for those terms within the governing documents. The trial court properly noted that there was no evidence that the association was in the best interest of the association if the contract had been an avoidable contract, but they ratified it. Simply living by the contract did not equate to ratification of the contract. But they accepted the management services, didn't they? They did accept the management services, and that's why the management company was compensated. The management company served through the end of October of 2011 and was compensated for those services. But just because that happened didn't mean that there was the ratification that is required if the contract is determined to be avoidable. What would constitute ratification? In this particular case, Your Honor, in this case I believe it would have been more of a ratification or a reformation of the contract. It would have been when the parties had realized which Mr. Skouras did testify of the trial. He did realize prior to July of 2011 that there was a term in the declaration that the management contract couldn't exceed two years. If once they learned of that term, they could have reformed the contract to comply with that term. I believe that reformation is the same as ratification. I asked, maybe I wasn't clear, but I asked what conduct would constitute ratification. You did, Your Honor, and I'm not suggesting that they're one and the same, but what I'm suggesting is that if they had become aware of the two-year    had then continued to live by the agreement or if they had been aware of the two-year limitation and they had  been aware    limitation and they continued to live by the agreement or if they had been aware of the two-year limitation and they continued to live by the agreement or if they had been aware of the two-year limitation. The association had a legal duty to strictly comply with the terms of the declaration and the failure to comply with those terms can result in a breach of fiduciary duty and more importantly it has to be complied with. Can you respond to the Avalon argument with respect to the manner of custom it's customary that management companies don't necessarily read the condo docs? I believe at the trial level it wasn't disputed that prior to the execution of the original agreement it is customary that the management company may not be as familiar with the terms of the underlying governing documents. However, once they become the manager for the association, I don't believe that it's customary. More importantly, the reason for that is there was a formal contract that makes it specific that a manager has to assist with that. And it may be prior to the time of the execution, but at the time of the extension, after years of managing the association, at that point, the management company    with the terms of the underlying governing documents. So we can't just look at what's customary within the industry, which I dispute after you've been managing them that you wouldn't know some of the terms, maybe not off the top of your head. If we to accept this argument that management company or as the agent would be responsible for knowing those terms would create a ripple effect and would affect how other vendors would contract with the association. That would not be the case. And the reason that would not be the case is here we're dealing with a manager. And a management company today, yes, should be familiar with what the terms of the governing documents. But that doesn't mean a landscaper is or another type of a third party vendor. Because that third party vendor should be responsible for knowing the terms of the governing documents. And the third party vendor should be responsible for knowing the terms of the governing documents. And that would then be allowing the alliance to enforce what is considered a void contract since there was no authority for the association to enter into a contract in excess of two years. Just in conclusion, the plaintiff and the appellant at the trial court properly looked at it, they considered if it was void, and I believe they even looked at when they were considering the mutual mistake whether or not it was a voidable contract. It was voidable. They either opted to comply with it, opt out of it, or to ratify it. There was no evidence that there was ratification. But more importantly, because of the testimony and because of the terms of the underlying declaration and the recent case law as it relates to association voting, we can't just ignore the terms of the declaration. An association is not as autonomous as was presented by the appellant. An association through its board of directors must comply with the terms of the governing documents, and this has been recognized by several different cases in the state of Illinois. Are there any other questions, Your Honors? Thank you. To respond to   the contract itself, under Article 4, Management Services, starts by saying, as directed by the board of directors, the president of the board, APM agrees to have the following functions, duties, responsibilities, and authorities, and then lists all the administrative services that it will do. That in and of itself indicates that it is by direction of the board, specifically the president, that the management company will act. It is there to assist with compliance. The management company is not a guarantor of its compliance. The management company, nor the board members, are attorneys to suggest that they will reform a contract once they find a herring in their activities is not realistic. With respect to it being a void avoidable contract, to be a void avoidable contract, as the trial court indicated, there was a mutual mistake of fact. All the parties were universally ignorant of that restriction. The association failed to prove at trial that the difference between the two-year and the three-year contract was material enough to the contract to make it voidable. There's no question that duration of a contract has to be a necessary element in every contract. It's the difference between the two-year and the three-year that is really at issue and is the difference material so that neither party could reasonably be expected to carry on with this contract. The case law and the restatement of contracts cited in our briefs are very clear that the association would have to be adversely affected to prove that it was a material element. There was no adverse effect. In fact, there was quite a benefit to the association. So, again, it really boils down to the court ignoring that the association saw the contract as valid, terminated as of October 13th relying on the provisions of the contract, and then attempted to use material mutual mistake as a reason to void the contract after it was already terminated. Their election of remedy was that they chose to terminate it and it was subsequent that they sought an alternate. I'm all for alternative pleadings. It's a very useful tool for all of us to  to proceed with the contract. And that termination was in violation. They did not approve a material breach of that contract on the part of APM. And the 11th hour attempt to rescind the contract issued in due course. Thank you.